## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GERALD L. WONG and SUSAN H. WONG, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     1:23cv223 |
| | ) |
| GUILFORD COUNTY SHERIFF DEPARTMENT, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on (i) the "Motion to Dismiss Amended Complaint" (Docket Entry 9)[1] (the "Dismissal Motion") filed by the Guilford County Sheriff's Department (the "Sheriff's Department"), Sheriff Danny H. Rogers, Captain David Prince, Captain Nathan Edwin Triche, and Deputy S. Jenkins (collectively, the "Guilford Defendants"); (ii) the "Motion to Oppose Dismissal Amended Complaint and Request for Summary Judgment" (Docket Entry 17) ("Plaintiffs' Guilford Motion") filed by Gerald L. Wong (at times, "Plaintiff" or "Wong") and Susan H. Wong (individually, at times, "Mrs. Wong," and collectively with Wong, the "Plaintiffs"); (iii) Plaintiffs' "Motion to Oppose Winiarski Dismissal Amended Complaint and Request for Summary Judgment" (Docket Entry 24) ("Plaintiffs' Joint Motion"); (iv) Guilford Defendants' "Motion for

_____

1  For legibility reasons, this Opinion uses standardized spelling and omits all-cap, underscored, bold, and/or italicized font in quotations from the parties' materials.

Summary Judgment" (Docket Entry 26) (the "Guilford Motion");
(v) "Deputy James J. Winiarski's Cross-Motion for Summary Judgment"
(Docket Entry 29) ("Winiarski's Motion"); (vi) Plaintiffs' "Motion
to Oppose Former Deputy Winiarski['s] Cross-Motion for Summary
Judgment" (Docket Entry 35) ("Plaintiffs' Winiarski Motion"); and
(vii) Plaintiffs' "Motion for Discovery of Documents and Materials
Relating to Casefile: 1:23-CV-0023" (Docket Entry 36) (the
"Discovery Motion"). For the reasons that follow, the Court
(i) should deny Plaintiffs' Guilford Motion, Plaintiffs' Joint
Motion, the Guilford Motion, Winiarski's Motion, and Plaintiffs'
Winiarski Motion (collectively, the "Summary Judgment Motions"),
(ii) will deny the Discovery Motion, and (iii) should grant the
Dismissal Motion, such that only Wong's claim against Deputy
Winiarski for arrest without probable may proceed.

## BACKGROUND

Alleging a claim under "Title 42 U.S.C. 1983" for "[u]nlawful
search and seizure" (Docket Entry 1 (the "Complaint") at 3),[2]
Plaintiffs sued the Sheriff's Department, "James John Winiarski,"
a "Former Guilford County Deputy," and "S. Jenkins," a "Guilford
County Deputy" (id. at 2-3). The Complaint identifies the first
defendant as "Guilford County Sheriff['s] Department / ~~Danny~~
~~Rogers~~" [sic] with the handwritten initials "GW" annotating the

---

2 Docket Entry page citations utilize the CM/ECF footer's pagination.

2

handwritten strikethrough of Sheriff Rogers' name. (Id. at 2.) The Complaint further indicates that Plaintiffs sue the Sheriff's Department in its official capacity, but Winiarski and Jenkins in their individual capacities. (See id. at 2-3.) With the exception of the handwritten annotation regarding Sheriff Rogers, the Complaint identifies all three defendants in typewritten font with detailed contact information. (Id.)

A day after filing the Complaint, Plaintiffs filed an Amended Complaint that identifies three new defendants: "Guilford County Sheriff Danny H. Rogers," "Cpt. Nathan Edwin Triche," a "Guilford County Sheriff Capt.," and "David Prince," also a "Guilford County [S]heriff Cpt." (Docket Entry 3 at 2-3). (See id. at 1-3, 6.) Using typewritten font, the Amended Complaint provides the contact information for these defendants and identifies them as sued in their official capacities. (See id. at 2-3.) The Amended Complaint also includes a handwritten addition of defendants "4. Guilford County Sheriff Dept.[,] 5. Former Deputy James John Winiarski[, and] 6. Deputy S. Jenkins," with no further details regarding those defendants. (Id. at 3.) Aside from this difference in identified defendants, the Amended Complaint mirrors the original Complaint. (Compare Docket Entry 1 at 1-6, with Docket Entry 3 at 1-6.)[3]

_____

3 Under the circumstances, this Opinion treats the Amended Complaint as bringing the same type of claims against the Sheriff's Department and Deputies Winiarski and Jenkins as the original

According to the Amended Complaint, "[o]n December 2nd 2022 at about 10am EST [D]eputy S. Jenkins and then[-D]eputy James John Winiarski are/were employed by the Guilford County Sheriff['s] Dep[artment] and did under the color of law and without probable cause or crime falsely and unlawfully detain and arrest Gerald L. Wong with force and injuries." (Docket Entry 3 at 4.) As for the facts underlying Plaintiffs' claim(s), the Amended Complaint states:

> At approximately 10am [on December 2, 2022,] I was lawfully in the Guilford County Courthouse to attend a scheduled arbitration hearing. I was denied entry past the security scanners for having a supposed prohibited electronic device. Security called for sheriff deputies. As I met [D]eputy Winiarski at the security rope line he slapped my hand and told me "You're outta here". I retrieved my scanner basket with my belongings in it and proceeded to leave as requested[.] As I was leaving Winiarski pushed me from behind, I turned to him and said "Stop touching me, I'm leaving". Winiarski continued to bat my hands and push me while yelling louder "Get out, get out now!". Winiarski followed me outside of the Courthouse to the patio. While I was looking for a place to set my scanner basket to repocket my things Winiarski ordered me to give him my identification, I told him as far as I know I did not have to give I.D. unless I have been lawfully arrested. At this moment Winiarski said "You're under arrest". Winiarski started to turn me around to handcuff me, I am still holding my scanner basket, when deputy S. Jenkins rushed in and grabbed hold of me and both deputies threw me to the ground causing all my things in the scanner basket to be strewn about. I was paraded to the "booking room". There is full video, some with sound.

(Id.)

---

Complaint did (i.e., an official-capacity claim against the Sheriff's Department and individual-capacity claims against Winiarski and Jenkins).

4

In regards to alleged injuries, the Amended Complaint reports:

> After being taken to the sheriff "Booking room" I was unlawfully searched by [D]eputy L. Cromer and then handcuffed to a metal chair.

> I told the deputies in the office my heart was pounding and that I had suffered a "Widow maker" heart attack within the last two years. [T]his did not seem to concern them until I pointed to my left bleeding wrist and said my knee was hurting. (Photos) At that point they called for medical.

> My right knee was throbbing so I asked to be taken to Moses Cone Hospital for x-rays.

> The abrasion to my left wrist went to the bone and my knee seemed to be only bruised but to this day my knee will hurt whenever it slightly bumps into something.

> After being "booked" and released, by the next morning I noted two deeply bruised toes and scrapes on my elbows.

> I also have pictures of these injuries.

(Id. at 5.)

Finally, in terms of relief requested, the Amended Complaint states:

> I was deprived of my liberty and freedom as guaranteed by the United States Constitution.

> I am seeking Compensatory damages for attorney fees currently of six hundred dollars ($600.00) and any future costs that may arise as a direct result of this unlawful action against me, i.e. [c]ourt costs, service fees, expungement costs of all booking photographs and finger prints and unknown or unexpected charges that should become known by trial date.

> I further ask that the [C]ourt award one million dollars ($1,000,000) in punitive damages to penalize the [S]heriff['s] [D]ep[artment's] systemic lack of action and condoning its deputies['] unlawful and egregious behavior.

5

My wife was very distraught when she heard I had been arrested and believed that I was actually in the wrong until she saw the videos. This caused her emotional stress until a judge ordered the release of known video recordings. There are no words I can use to describe the total humiliation due to these deputies['] unlawful actions. I committed no crime to have warranted this arrest. I was embarrassed, humiliated, lost sleep by being physically assaulted, handcuffed and paraded through the Courthouse. Once again at the hospital I was attended by a sheriff deputy at all times in the waiting area where many eyes watched me like I was some kind of dangerous criminal. I was then handcuffed behind my back again in front of hospital staff and transported to the jail to be booked and suffered the indignity of being forced to give up photos and finger prints.

As a candidate for the 2018 U.S. Congress I feel my reputation and self respect has been damaged to an immense degree that I may never overcome. I would also like the commanders of the sheriff department to be held to account for deciding the actions of these two deputies were "Justified" even when they viewed the video evidence showing I committed no crime.

(Id.)

Although the Complaint and Amended Complaint reference videos and photographs (see Docket Entry 1 at 4-5; Docket Entry 3 at 4-5), Plaintiffs did not include any videos, photographs, or other exhibits with their Complaint or Amended Complaint (see Docket Entries 1-3). The Guilford Defendants thereafter moved to dismiss the Amended Complaint. (See Docket Entry 9.) In so doing, the Guilford Defendants relied on, inter alia, various security footage videos and what they described as "two Administrative Orders [that] were in place at the [Guilford County] Courthouse" on December 2,

2022 (Docket Entry 10 at 2 n.3).[4] (See Docket Entries 10-11.) Plaintiffs responded by filing Plaintiffs' Guilford Motion, "mov[ing] to oppose [the Dismissal Motion] entirely and ask[ing] for summary judgment [to] be made in my [sic] favor." (Docket Entry 17 at 1.) In connection with Plaintiffs' Guilford Motion, Plaintiffs filed multiple exhibits, including various audio recordings and videos. (See Docket Entries 17 to 18-9.) With certain exceptions, Guilford Defendants objected to consideration of those exhibits in resolving their Dismissal Motion (see, e.g., Docket Entry 19 at 2-4), arguing that "Plaintiffs are [m]istaken as to the [p]urpose of a [Federal] Rule [of Civil Procedure] 12 [m]otion to [d]ismiss" (id. at 4). Guilford Defendants also contemporaneously (i) opposed Plaintiffs' summary judgment request and (ii) moved for summary judgment. (See Docket Entry 25 at 1; see also Docket Entry 26.)

Meanwhile, Winiarski filed an Answer to Plaintiffs' Amended Complaint (see Docket Entry 20), which Plaintiffs misinterpreted as another dismissal motion (see Docket Entry 24 at 1 (explaining that "this response will bring counter arguments to both Winiarski's

_____

4  Despite this description, one of the referenced attachments more closely resembles a press release (see, e.g., Docket Entry 10-1 at 1 (bearing notation "Public Announcement For Immediate Publication" and title "County Courthouse Security Personnel will Begin Enforcement of Cell Phone Ban on February 3, 2014" and indicating that "[t]his action has been taken by order of [certain judges]")) than a judicial order (cf., e.g., Docket Entry 10-2 (entitled "Second Amended Administrative Order")).

Motion (Dated 06/09/2023) and Sheriff's Department counsel's response dated (06/05/2023)")). After Plaintiffs filed Plaintiffs' Joint Motion, Winiarski moved for summary judgment (see Docket Entry 29), prompting Plaintiffs' Winiarski Motion (see Docket Entry 35). Plaintiffs thereafter "move[d] the Court for an Order compelling discovery from the defendants." (Docket Entry 36 at 1.) Guilford Defendants and Winiarski (collectively, the "Defendants") opposed the Discovery Motion as, inter alia, premature in light of the "five dispositive motions . . . currently pending before the Court." (Docket Entry 38 at 2.) As Defendants' opposition reflects, the parties have not yet engaged in a conference under Rule 26(f) of the Federal Rules of Civil Procedure (the "Rules") and the Court has not yet entered a "Rule 26(f) case management order" (id. at 1 n.1), so "[d]iscovery in this case has not commenced" (id. at 1). (See Docket Entries dated Mar. 13, 2023, to present.)

## **DISCUSSION**

### **I. The Summary Judgment Motions**

"As a general rule, summary judgment is appropriate only after 'adequate time for discovery.'" Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); see also Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 719 (4th Cir. 1991) ("Summary judgment may only be entered after adequate time for

8

discovery." (internal quotation marks omitted)). Thus, "[g]enerally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (second set of brackets in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). Further, although a "party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery," which usually occurs through a Rule 56(d) affidavit, id. (internal quotation marks omitted), "where the nonmoving party's objections before the district court served as the functional equivalent, a Rule 56(d) affidavit may not be necessary," Dave & Buster's, Inc. v. White Flint Mall, LLLP, 616 F. App'x 552, 561 (4th Cir. 2015) (internal quotation marks omitted). See Harrods, 302 F.3d at 245-47 (concluding that plaintiff "adequately fulfilled the purpose of Rule 56([d]) by putting the district court on notice of the reasons why summary judgment was premature," and that, where "the district court granted summary judgment to [a defendant] before [the plaintiff] had adequate time to pursue discovery," that "grant of summary judgment . . . was premature," necessitating "revers[al of] the summary judgment and

9

remand for further proceedings, including any other discovery that is necessary").

Here, the parties have not yet begun discovery. (*See* Docket Entries dated Mar. 13, 2023, to present (lacking Scheduling Order)); *see also* M.D.N.C. LR 16.1(a) ("[D]iscovery shall not commence until entry of the scheduling order."). Moreover, despite requesting summary judgment in their oppositions to Defendants' filings, Plaintiffs have repeatedly indicated their need for discovery to adequately develop their claims. (*See* Docket Entry 18 (the "Response") at 6 ("I believe we would find a pattern and practice 'Justifying' Use of Force allegations by the Sheriff['s] Department anytime a [lawsuit] is threatened[ s]hould we be allowed to examine those records. I believe that during the discovery process I will be able obtain more evidence of this collaboration."); Docket Entry 24 at 6 ("Mr. Winiarski now states that Deputy Jenkins 'Witnessed the shove' and came to the assistance of Deputy Winiarski. If this is true then it should be in both Winiarski's and Deputy Jenkins['] official incident report, which Mr. Wong has been denied access to[] after several open record requests, and which I hope to attain during discovery if things progress that far. Mr. Wong believes that along with the video and [sic] all discoverable evidence will prove both Winiarski and Jenkins perjured themselves."); Docket Entry 36 at 2 ("Plaintiff believes that this discovery is necessary to establish

his claims for unlawful arrest under 42 USC [§ 1983].
Specifically, [P]laintiff seeks to demonstrate that the defendants
lacked probable cause to arrest him, that they used excessive force
in arresting him, and that they failed to follow their own policies
and procedures in arresting him.").)  Under the circumstances, the
pro se Plaintiffs have "adequately fulfilled the purpose of Rule
56([d]) by putting the [Court] on notice of the reasons why summary
judgment [i]s premature."  Harrods, 302 F.3d at 245.  The Court
should therefore deny the Summary Judgment Motions as premature.
See id. at 245-47.[5]

## II. The Discovery Motion

In the Discovery Motion, Gerald Wong "requests [certain
identified] discovery from the defendants."  (Docket Entry 36 at 1;
see also id. at 1-2.)  The Discovery Motion further requests "that
this discovery be turned over within 30 days of th[e Discovery
Motion's filing]."  (Id. at 2.)  Finally, the Discovery Motion
"requests that the Court grant [Wong's] motion for an Order
compelling discovery from the defendants."  (Id.)

Under this Court's Local Rules, discovery requests (and
responses thereto) "shall not be filed unless the Court so orders
or unless the Court will need such documents in a pretrial
proceeding[;]" instead, "[a]ll discovery papers must be served on

_____

5  In addition, granting the Dismissal Motion would moot the
Guilford Motion.

11

other counsel or parties." M.D.N.C. LR 26.1(b)(3). Further, the Rules oblige parties to timely respond to appropriate discovery requests. <u>See</u> Fed. R. Civ. P. 33(b); Fed. R. Civ. P. 34(b)(2). Thus, rather than pursuing discovery through the Court, Wong should pursue discovery directly from the relevant Defendants once the discovery period commences.[6] As noted, however, the discovery period has not yet commenced and "[i]t is the long-standing practice of this district not to commence discovery until dispositive motions are resolved," <u>In re: Crop Protection Prods. Loyalty Program Antitrust Litig.</u>, No. 1:23md3062, Docket Entry 62 at 2 (M.D.N.C. June 7, 2023) (citing M.D.N.C. LR 26.1(a) n.1). To the extent, therefore, that the Discovery Motion constitutes a request to authorize the requested discovery, it remains premature.

Accordingly, the Court will deny the Discovery Motion.

**III. Dismissal Motion**

**A. Rule 12(b)(6) Standards**

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of

---

6 To the extent Wong seeks an order compelling production of the requested materials (<u>see</u> Docket Entry 36 at 2), the Discovery Motion does not satisfy the prerequisites for a motion to compel, <u>see, e.g.</u>, Fed. R. Civ. P. 37(a)(1) (explaining that party "mov[ing] for an order compelling disclosure or discovery" must provide prior notice to other parties and "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action"). (<u>See generally</u> Docket Entry 36.)

12

a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).[7] Accordingly, in reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).

Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Nevertheless, the Court "will not accept legal conclusions couched as facts or unwarranted inferences,

---

7 Guilford Defendants purport to bring the Dismissal Motion "pursuant to Rules 12(b)(1), (2), and (6)" as to the Sheriff's Department (Docket Entry 9 at 1) and Rule 12(b)(6) as to the remaining defendants (see id. at 1-2). According to Guilford Defendants, "[t]o cover all its bases, the Sheriff's Department seeks dismissal under Rules 12(b)(1), (2), and (6) [on the theory that it "lacks the capacity to be sued" (Docket Entry 10 at 5)], although some Middle District case law holds a Motion based on lack of capacity to be sued should be evaluated under Rule 12(b)(6)." (Id. at 6 n.6 (citing Alley v. Yadkin Cnty. Sheriff Dep't, No. 1:16cv100, 2017 WL 5635946, at *1 (M.D.N.C. Jan. 27, 2017)).) As the Alley Court explained, the Sheriff Department's "defense of lack of capacity to be sued is properly brought before the Court on a motion to dismiss under Rule 12(b)(6) for failure to state a claim," and this Opinion "will therefore consider [the Dismissal Motion] under Rule 12(b)(6)." Alley, 2017 WL 5635946, at *1.

13

unreasonable conclusions, or arguments." United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) (internal quotation marks omitted); see also Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)). The Court can also "put aside any naked assertions devoid of further factual enhancement." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. See id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" cannot "survive a Rule 12(b)(6) motion." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

Finally, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont, 637 F.3d at 448. The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Generally, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment," an action from which courts should refrain "where the parties have not had an opportunity for reasonable discovery." E.I. du Pont, 637 F.3d at 448. Nevertheless, in

15

reviewing Rule 12(b)(6) motions, courts "may properly take judicial notice of matters of public record." <u>Philips</u>, 572 F.3d at 180.

## B. Section 1983 Standards

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." <u>Williamson v. Stirling</u>, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted). "To establish personal liability under § 1983, however, the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution." <u>Id.</u> (brackets, citation, and internal quotation marks omitted). "Importantly, mere knowledge of such a deprivation does not suffice." <u>Id.</u>

In turn, municipal liability attaches only "where the municipality causes the deprivation 'through an official policy or custom.'" <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003). Official-capacity liability under Section 1983 thus attaches only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). In that regard,

> Municipal policy may be found in written ordinances and
> regulations, in certain affirmative decisions of

16

individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens. Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law."

Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citations omitted).

Importantly, "an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy." Perdue v. Harrison, No. 1:17cv403, 2017 WL 4804363, at *2 (M.D.N.C. Oct. 24, 2017). "Rather, the official must have 'final authority' over government policy with respect to the action in question to trigger official capacity liability." Id. (certain internal quotation marks omitted).

Finally, in assessing Plaintiffs' claims, "[the Court] must also keep firmly in mind the well-settled principle that a [S]ection 1983 claim must be based upon the violation of [the] plaintiff's personal rights, and not the rights of someone else." Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990); see also Settle v. Slager, 628 F. App'x 206 (4th Cir. 2016) (explaining that "[a Section 1983 plaintiff] has no standing to assert the constitutional rights of a third party" (citing Archuleta, 897 F.2d at 497)); Mitchell v. Cannon, No. 2:07cv3259, 2009 WL 824202, at *18 (D.S.C. Mar. 26, 2009) (explaining that "[a p]laintiff may not base a § 1983 claim on a violation of the rights of third parties"

17

and collecting cases), aff'd, 367 F. App'x 390 (4th Cir. 2010).
Moreover, "[b]ecause a § 1983 action is personal to the direct
victim of the alleged constitutional violation, no cause of action
may lie under § 1983 for emotional distress or any other collateral
injuries allegedly suffered by a third party." Settle v. Slager,
No. 2:15-cv-1802, 2015 WL 12865194, at *2 (D.S.C. May 20, 2015),
report and recommendation adopted, 2015 WL 12910627 (D.S.C. June
22, 2015), aff'd, 628 F. App'x 206; see also Grandstaff v. City of
Borger, 767 F.2d 161, 172 (5th Cir. 1985) (upholding award of
damages on state negligent infliction of emotional distress claim
for familial bystanders who witnessed police killing of family
member, but finding that similar recovery "is not permitted under
§ 1983" as "there is no constitutional right to be free from
witnessing [such] police action"); Carter v. Jess, 179 F. Supp. 2d
534, 540 (D. Md. 2001) ("[A]lthough emotional damages are available
under § 1983, a claim of infliction of emotional distress [under
state tort law] cannot form the basis of a § 1983 action because
there is no constitutionally protected interest at stake.").  In
other words, "[t]here is no [freestanding] constitutional right to
be free from emotional distress," Shinn on Behalf of Shinn v.
College Station Indep. Sch. Dist., 96 F.3d 783, 786 (5th Cir. 1996)
(citing Grandstaff, 767 F.2d at 172), that could support a third
party's Section 1983 claim.  See also id. (observing that "a

18

constitutional violation does not occur every time someone feels that they have been wronged or treated unfairly").

## C. Preliminary Matters

As an initial matter, the Amended Complaint alleges that, following Wong's arrest, he "was unlawfully searched by [D]eputy L. Cromer." (Docket Entry 3 at 5.) Plaintiffs did not sue Deputy Cromer (see id. at 1-3) and have not alleged that any Defendants participated in this allegedly unlawful search or that Deputy Cromer acted pursuant to any official policy in executing this search (see id. at 1-6). Accordingly, Plaintiffs fail to allege a viable unlawful search claim against Defendants, necessitating dismissal of that claim. See Williamson, 912 F.3d at 171; Lytle, 326 F.3d at 471.[8]

Plaintiffs' claim for "emotional stress" Mrs. Wong suffered regarding her husband's arrest (see Docket Entry 3 at 5; see also Docket Entry 18 at 11 (discussing scope of emotional distress

---

[8] Per the Response, "[s]ince I have dispelled any lawful reason for Winiarski to arrest me, I argue that any search of my person by any co-officers was illegal using the doctrine 'Fruit of the poisoned tree.'" (Docket Entry 18 at 14.) "[T]he so-called 'fruit of the poisonous tree'" doctrine requires, in certain circumstances, "trial courts to exclude unlawfully seized evidence in a criminal trial." Utah v. Strieff, 579 U.S. 232, 237 (2016) (certain internal quotation marks omitted). It does not operate to impose Section 1983 liability on individuals not personally involved in the alleged constitutional violation. See White v. City of Greensboro, 608 F. Supp. 3d 248, 265 (M.D.N.C. 2022) ("[I]t is clear that the exclusionary rule and the fruit of the poisonous tree doctrine simply do not apply in civil cases." (internal quotation marks omitted)).

claim)) likewise falls short. Mrs. Wong cannot recover for alleged emotional injuries that she suffered as a consequence of her husband's allegedly unconstitutional arrest. See, e.g., Settle, 2015 WL 12865194, at *2. Because Mrs. Wong does not qualify as a direct victim of the allegedly unconstitutional action (see Docket Entry 3 at 5; Docket Entry 18 at 11), the Court should dismiss Mrs. Wong's Section 1983 claim(s). See, e.g., Barber v. Overton, 496 F.3d 449, 457-58 (6th Cir. 2007) ("[T]he alleged constitutional tort in this case is the state's release of [the plaintiff's] husband's private information. [The plaintiff] cannot point to an affirmative act committed by the government which violated her constitutional rights. Although she can trace her injury to the government's release of her husband's information, this does not render her a direct victim for purposes of bringing a § 1983 claim. Because [the plaintiff's] information was not released by the state, the state did not violate her constitutional rights, and she therefore cannot proceed under § 1983." (citation omitted)).[9]

Plaintiffs' claim against the Sheriff's Department similarly fails. "State law dictates whether a [state] governmental agency has the capacity to be sued in federal court." Efird v. Riley, 342

---

[9] In this regard, the Amended Complaint's repeated references to "I," "me," and "my" and its reference to Mrs. Wong solely as "[m]y wife," "she," and "her" reinforces that Plaintiffs' claims rest on the alleged violations of Wong's rights rather than any direct violation of Mrs. Wong's rights. (See Docket Entry 3 at 1-6.)

F. Supp. 2d 413, 419-20 (M.D.N.C. 2004); see also Avery v. County of Burke, 660 F.2d 111, 113-14 (4th Cir. 1981) ("The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held."). "There is no North Carolina statute authorizing suit against a county's sheriff's department." Efird, 342 F. Supp. 2d at 420. "Accordingly, the Sheriff's [Department] is not a legal entity subject to suit under the law of North Carolina." Alley v. Yadkin Cnty. Sheriff Dep't, No. 1:16cv100, 2017 WL 5635946, at *2 (M.D.N.C. Jan. 27, 2017) (internal quotation marks omitted). Plaintiffs therefore "fail[] to state a cognizable legal claim" against the Sheriff's Department, and the Court should grant the Sheriff's Department's Rule 12(b)(6) request for dismissal. Id.[10]

### D. Official-Capacity Claims

Liberally construed, the Amended Complaint asserts official-capacity claims against Sheriff Rogers, Captain Triche, and Captain Prince (see Docket Entry 3 at 2-3) "for deciding the actions of the[] two deputies were 'Justified' even when they viewed the video evidence showing [that Wong] committed no crime" (id. at 5). "These official capacity claims are all, in essence, claims against the Sheriff's [Department]." Blair v. County of Davidson, No.

---

10    Alternatively, any Section 1983 claim against the Sheriff's Department simply would replicate the official-capacity Section 1983 claim(s) Plaintiffs brought against Sheriff Rogers, Captain Triche, and Captain Prince, which for reasons shown in the next subsection cannot proceed.

21

1:05cv011, 2006 WL 1367420, at *11 (M.D.N.C. May 10, 2006); <u>see also</u> <u>Gantt v. Whitaker</u>, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002) ("As a preliminary matter, the court notes that [the p]laintiff has filed claims against both Sheriff Whitaker and Officer Whitesides in their official capacities. As [the d]efendants correctly point out, however, such claims actually constitute a suit against the entity of which those officials are agents — in this case, the Office of Sheriff of Davie County."), <u>aff'd</u>, 57 F. App'x 141 (4th Cir. 2003). As such, Plaintiffs' claims against Captain Triche and Captain Prince qualify as redundant of his claim against Sheriff Rogers and should be dismissed. <u>See</u> <u>Gantt</u>, 203 F. Supp. 2d at 508 ("Therefore, because [the p]laintiff has stated a cognizable claim against the Sheriff's Office by virtue of his official capacity claim against Sheriff Whitaker, [the p]laintiff's official capacity claim against [Officer] Whitesides is redundant and is dismissed.").

In addition, the Amended Complaint asserts only that Plaintiffs "would also like the commanders of the [S]heriff['s D]epartment to be held to account for deciding the actions of these two deputies were 'Justified' even when they viewed the video evidence showing [that Wong] committed no crime." (Docket Entry 3 at 5; <u>see</u> <u>id.</u> at 1-6.) Although it requests punitive damages for the Sheriff Department's alleged "systemic lack of action and condoning its deputies['] unlawful and egregious behavior" (<u>id.</u> at

5), the Amended Complaint contains no facts suggesting that "the commanders" acted pursuant to any official policy or custom in making such determination (see id. at 1-6), as required for a viable official-capacity claim, see, e.g., Lytle, 326 F.3d at 471. Moreover, because the commanders' post-incident determinations regarding the propriety of the deputies' actions in arresting Wong did not cause the allegedly unlawful arrest, Plaintiffs lack a viable Section 1983 claim against those officials. See, e.g., Malek v. Knightly, No. 94-2113, 56 F.3d 59 (table), 1995 WL 338178, at *3 (1st Cir. 1995) ("[T]he failure of a supervisor to discipline his subordinates following a single instance of 'misconduct' is insufficient for a finding of supervisory liability because the failure to act cannot have caused the violation.").

Plaintiffs attempt to supplement their official-capacity allegations in their opposition to the Dismissal Motion. (See Docket Entry 18 at 3-6.) However, "[a plaintiff] is bound by the allegations contained in [hi]s complaint and cannot, through the use of motion briefs, amend the complaint," Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998). See, e.g., Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even

23

without filing an amendment, and simply by raising a point in a brief." (citations and internal quotation marks omitted)); <u>see also</u> <u>Days v. U.S. Bank Nat'l Ass'n</u>, No. 3:18cv440, 2019 WL 8619628, at *2 (W.D.N.C. June 4, 2019) ("In order to amend their complaint, [the p]laintiffs may not simply add allegations to their already existing complaint as they have done here. Rather, they must submit a proposed amended complaint that contains all claims they intend to bring in this action against all [the d]efendants they intend to sue. That is, [the p]laintiffs may not amend their complaint in piecemeal fashion." (emphasis omitted)). Accordingly, Plaintiffs cannot stave off dismissal through the Response's new allegations against Sheriff Rogers, Captain Triche, and Captain Prince.

In any event, those new allegations fail to state a viable claim. According to the Response:

> 4. The command structure, Sheriff Rogers, Cpt. Triche and Cpt. Prince acted collectively [a]s the Guilford County Sheriff['s] Dep[artment] to intimidate the Plaintiff with the belief by "Justifying" a use of force, I would not sue. They did so even after viewing video evidence of the entire event that to any reasonable person should have exonerated me of any crime.

> NCHB 536 applies as: [sic]

> 5. Evidence will prove they were more concerned with being sued then [sic] disciplining Former Deputy Winiarski and Deputy Jenkins.

> North Carolina has strong laws governing the release of records pertaining to police officers' disciplinary history.

24

Audio recordings will show that the Guilford County Sheriff['s] Dep[artment] was deliberately indifferent to the risk of harm to the plaintiff.

(Docket Entry 18 at 3.)[11]

The Response further asserts:

(1A1) In the provided Audio Recordings conversations with Captain Triche at 07:40 states that he had the opportunity [t]o view the [d]efense['s] supplied [v]ideos and [they] "[h]ad been reviewed by 'multiple folks.[']"

\*\*\*\*\*

On Audio (1A2) Triche states that the [v]ideos were reviewed through [t]he chain of command and at 01:35 states all said "force was justified."

Audio Capt. Prince 12/15/2022

On Audio (2A1) 00:25 [s]tates that "Shipman, Triche, Major Moore has [s]aid 'Per Policy, these guys didn't do anything wrong.[']"

If the court finds these officers "Did Not" act per policy by viewing the video then I submit this proves the Sheriff['s] Dep[artment] is liable under 42 U.S.C[. §] 1983 because it [p]roves the department was Deliberately Indifferent to the risk of harm to the Plaintiff.

(Id. at 4.)  Finally, the Response contends:

_____

11  Plaintiffs submitted various audio recordings of apparent telephone conversations between Wong and Sheriff Rogers, Captain Triche, and Captain Prince.  (See id. at 4 (referencing "Plaintiff Exhibit (A) Thumb Drive Cell phone recordings"); see also Docket Entry 17-1 (reflecting manual filing of "Exhibit A").)  The Court cannot consider these extraneous materials in resolving the Dismissal Motion.  See E.I. du Pont, 637 F.3d at 448; Philips, 572 F.3d at 180.  Having reviewed the parties' various exhibits in connection with the Summary Judgment Motions, however, the undersigned notes that consideration of the audio recordings would not alter the resolution of Plaintiffs' claims against Sheriff Rogers, Captain Triche, and Captain Prince.

> I believe we would find a pattern and practice
> "Justifying" Use of Force allegations by the Sheriff['s]
> Department anytime a [lawsuit] is threatened[ s]hould we
> be allowed to examine those records. I believe that
> during the discovery process I will be able obtain more
> evidence of this collaboration.

(<u>Id.</u> at 6.)

First, Plaintiffs offer only speculative assertions, without any factual underpinning, regarding the alleged practice of deeming justified uses of force when individuals threaten litigation regarding such incidents. (<u>See</u> <u>id.</u> at 3-6.) Such allegations fail to state a viable claim. <u>See, e.g.</u>, <u>Twombly</u>, 550 U.S. at 555 (explaining that, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Second, an officer's alleged failure to follow official policy (<u>see</u> Docket Entry 18 at 4), without more, does not create official-capacity liability for the officer's organization. <u>See, e.g.</u>, <u>Lore v. Wilkes</u>, No. 1:12cv165, 2013 WL 5935072, at *8 (M.D.N.C. Nov. 1, 2013) (finding that, where pleading "fails to allege facts which (if accepted as true) would establish that any constitutional violations occurred pursuant to a custom or policy of [relevant] entities," and instead "expressly asserts that" various defendants "violate[d] their own department's [sic] regulations and internal policies," pro se "[p]laintiffs' official capacity claims thus fail as a matter of law" (internal quotation marks omitted) (certain brackets in original)); <u>see also</u> <u>Collins</u>, 503 U.S. at 121 (explaining that official-capacity

26

liability occurs under Section 1983 only if "execution of a government's policy or custom . . . inflicts the injury" (internal quotation marks omitted)). Finally, Plaintiffs' new allegations all involve actions by Sheriff Rogers, Captain Trice, and Captain Prince after the disputed arrest. (See Docket Entry 18 at 3-6.) Thus, they cannot support Plaintiffs' Section 1983 claim. See, e.g., Malek, 1995 WL 338178, at *3.

In sum, Plaintiffs fail to state viable official-capacity claims against Sheriff Rogers, Captain Triche, and Captain Prince. The Court should therefore dismiss Plaintiffs' claims against these defendants.

### E. Deputy Jenkins

Finally, Plaintiffs contend that Deputy Jenkins violated Wong's fourth-amendment rights by arresting him without probable cause.[12] (See Docket Entry 3 at 3-5; see also, e.g., Docket Entry

---

12    Although Plaintiffs criticize Deputies Winiarski and Jenkins for their alleged use of force in effectuating this arrest (see, e.g., Docket Entry 3 at 4-5; Docket Entry 18 at 2), Plaintiffs do not bring an excessive force claim against either deputy (see, e.g., Docket Entry 2 at 1 (describing cause of action as "[u]nlawful arrest and seizure"); Docket Entry 24 at 3 (listing alleged violations as false arrest, wrongful detention, false imprisonment, and malicious prosecution), 8 (listing alleged violations as false arrest, wrongful detention, false imprisonment, malicious prosecution, pain and suffering, intentional infliction of emotional distress, and reputational harm); Docket Entry 35 at 11 (listing alleged violations as false arrest, wrongful detention, false imprisonment, malicious prosecution, pain and suffering, intentional infliction of emotional distress, and reputational harm).) Instead, Plaintiffs fault Winiarski for allegedly escalating the situation with Wong rather than complying with certain use of force and deescalation policies. (See, e.g., Docket

18 at 1 ("The Fourth Amendment prohibits the United States government from conducting 'unreasonable searches and seizures.' In general, this means police cannot search a person or their property without a warrant [o]r probable cause.").)[13] As this Court (per United States District Judge William L. Osteen, Jr.) has explained:

> The Fourth Amendment prohibits unreasonable seizures. "An arrest is a seizure of the person." Generally, warrantless seizures without probable cause are unreasonable. But "[a] warrantless arrest is reasonable if the officer has probable cause to believe the suspect committed a crime in the officer's presence."
>
> With respect to § 1983 claims based on arrests without probable cause, "[w]here . . . an arrest is based on probable cause, it cannot result in a constitutional violation. And in the absence of a constitutional violation, qualified immunity applies and the court need not address whether the constitutional right in question was clearly established."
>
> The critical inquiry is whether the facts establish probable cause for the arrest. "Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." "Probable cause is determined by a 'totality-of-the-circumstances' approach." Courts must consider "the whole picture," and evidence sufficient to secure a conviction is not required. Rather, probable cause "requires only a probability or

Entry 18 at 2-8.)

13 "[T]he Fourth Amendment[ also] . . . applies to the states through the Fourteenth Amendment." <u>United States v. Lull</u>, 824 F.3d 109, 115 (4th Cir. 2016).

substantial chance of criminal activity, not an actual showing of such activity," which "is not a high bar."

Jones v. Alvarez, No. 1:19cv930, 2022 WL 2440437, at *8 (M.D.N.C. July 5, 2022) (citations omitted) (brackets and ellipsis in original).

Importantly here, "an arrest made on the basis of information provided by a fellow officer may implicate the doctrine of qualified immunity under § 1983." Askins v. City of N.Y., No. 10 Civ. 2230, 2012 WL 12884363, at *5 (S.D.N.Y. Feb. 14, 2012), aff'd in part, vacated in part, remanded sub nom., Askins v. Doe No. 1, 727 F.3d 248 (2d Cir. 2013).[14] For example,

> [a] police officer is entitled to rely on the contents of a fellow officer's radio report and to presume that a statement alleging criminality is justified by probable cause. Therefore, while an arrest may be found unconstitutional if probable cause was in fact lacking, an officer who participates in the arrest is nonetheless immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively

---

14  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Accordingly, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015) (internal quotation marks and brackets omitted). In other words, "[t]he protection extends to all but the plainly incompetent or those who knowingly violate the law." Id. (internal quotation marks omitted).

> reasonable for him to rely on a fellow officer's report
> indicating the existence of probable cause.

Id. (internal quotation marks omitted). Thus, "[f]or qualified immunity, it may be that no officer actually has probable cause; nevertheless, an arresting officer is shielded from liability if he reasonably relied on the appearance of its existence." Id. at *9.

In other words, "[g]enerally, an assisting officer is entitled to rely on the probable cause determination of the arresting officer and may receive qualified immunity as long as the reliance is reasonable." Ehlers v. City of Rapid City, 846 F.3d 1002, 1010 (8th Cir. 2017); see also Doran v. Eckold, 409 F.3d 958, 965 (8th Cir. 2005) (explaining that, because "[Section] 1983 liability is personal," the relevant question "is whether the conduct of [the specific defendant] was constitutionally unreasonable," and "[t]he answer to that question must take into account the settled principle that law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable"). Thus, "[f]or an assisting officer" like Deputy Jenkins, "the inquiry is whether the officer's decision to assist was objectively reasonable in light of the circumstances and existing law." Fernandes v. Montgomery Cnty., No. 10-cv-752, 2012 WL 1664086, at *3 (D. Md. May 10, 2012) (internal quotation marks omitted). "An assisting officer is not required to make an independent assessment of probable cause before assisting other officers with a potentially dangerous arrest that is already

30

underway." Id. (brackets and internal quotation marks omitted). "In other words, when an assisting officer arrives late to the scene and has no personal knowledge of the arresting officer's basis for the arrest, liability does not turn on whether the arrest was actually based on probable cause." Id.

As relevant here, the Amended Complaint asserts that one morning "[Wong] was lawfully in the Guilford County Courthouse to attend a scheduled arbitration hearing. [He] was denied entry past the security scanners for having a supposed prohibited electronic device. Security called for sheriff deputies." (Docket Entry 3 at 4.) After Winiarski slapped Wong's hand and ordered him to leave, Wong "retrieved [his] scanner basket with [his] belongings in it and proceeded to leave as requested," but "[a]s [he] was leaving Winiarski pushed [Wong] from behind, [and Wong] turned to [Winiarski] and said 'Stop touching me, I'm leaving.' Winiarski continued to bat [Wong's] hands and push [him] while yelling louder 'Get out, get out now!'" (Id.) Winiarski followed Wong to the patio outside the courthouse and ordered him to provide his identification, to which order Wong replied, "as far as [Wong] kn[e]w[, he] did not have to give I.D. unless [he] ha[s] been lawfully arrested. At this moment Winiarski said 'You're under arrest.'" (Id.) "Winiarski started to turn [Wong] around to handcuff [him], [while he was] still holding [his] scanner basket, when [D]eputy S. Jenkins rushed in and grabbed hold of [Wong] and

31

both deputies threw [him] to the ground causing all [his] things in the scanner basket to be strewn about." (Id.) "[Wong] was paraded to the 'booking room.' There is full video, some with sound." (Id.)

Guilford Defendants provided the referenced "full video, some with sound" (id.) in support of their Dismissal Motion. (See Docket Entry 11.) Guilford Defendants assert that the Court may properly consider the videos in resolving their Dismissal Motion on the grounds that they qualify as "integral to the [Amended] Complaint and authentic." (Docket Entry 10 at 15 (internal quotation marks omitted).) Plaintiffs do not dispute that the Court may properly consider the videos in resolving the Dismissal Motion and, instead, rely on them in their opposition thereto. (See generally Docket Entry 18.) Although a close question, given the circumstances, the Court may consider the video evidence in resolving Plaintiffs' claim against Deputy Jenkins. See, e.g., Zsigray v. County Comm'n of Lewis Cnty., No. 2:16-cv-64, 2017 WL 462011, at *3 (N.D. W. Va. Feb. 2, 2017) (considering video evidence on Rule 12(b)(6) motion where "[the] plaintiff relie[d] heavily on the video tape of the incident in . . . the [c]omplaint"), aff'd, Zsigray v. County Comm'n of Lewis Cnty., 709 F. App'x 178 (4th Cir. 2018); see also Zsigray, 709 F. App'x at 179 (concluding that, where "[the plaintiff] stated several times in his complaint that a video recording of the incident supported his

version of the facts . . . . [,] the district court's consideration of the video was permissible," as "[t]he video, to which [the plaintiff] referred several times to authenticate his version of events, was integral to the complaint" and "the authenticity of the video was not in question").

As relevant here, the videos reflect:[15]

On the morning of December 2, 2022, the lobby of the Guilford County Courthouse contained a large security desk near the entrance door. A security queue ran from that entrance, passing the security desk, before doubling back on itself a few times and culminating in an area with multiple x-ray scanners and metal detectors. A security guard manned the security desk and at least two additional security officials manned the scanners.

Around 9:53 a.m. on December 2, 2022, Gerald Wong approached the area with x-ray scanners and metal detectors inside the Guilford County Courthouse with a scanner basket. Wong and the (mainly off-screen) individual operating the x-ray scanner discussed the contents of Wong's scanner basket, with the official informing Wong that he could not bring in his audio recorder, which Wong informed the official contained evidence that he needed for court. They discussed the device, which the official said required permission from a judge for entry into the courthouse, but which

---

15 Unless noted otherwise, the following information comes from the "Plaza XRay II with Audio.exe" file (the "Main Video"), the only video that contains audio.

33

Wong insisted did not qualify as a prohibited communication device. The officials told Wong that, absent the required permission, he either needed to put the device in his vehicle or in a lockbox in front of the courthouse, but Wong stated that he could not utilize those options as he lacked time to return to his vehicle and money for the lockbox.

When one of the officials replied that "you can't bring it in," Wong took the device and threw it behind him into the area roped off for those queuing up for security, where it clattered on the floor out of the video frame. Wong then stated, "how's that," and the first official replied "go get it, go get it, you're still not coming in here" and further stated, while picking up the scanning basket, "take your stuff." Wong took the basket, said "thank you," put it back down on the x-ray scanner, and stood in front of the metal detector. As the first official told Wong to go get his device, Wong answered "well f— you, I ain't moving" and stood in front of the metal detector. As he stood there, one of the court security officials walked into the video frame in front of the metal detectors from the direction of the x-ray scanner, saying, "I got you." The first official interjected, "where's Sheriff Wini[arski]," and the second one said, "He's right there," before stating "Next" and gesturing to the next person in line.

The security guard manning the security desk near the courthouse entrance watched the unfolding situation. When Wong

34

threw his recorder, the security guard got up from the desk and walked to the courthouse door, reaching it just as Wong said "well f— you, I ain't moving." The security guard held the courthouse door open while Wong stood in front of the metal detector. Although a sign obscures the security guard's actions on the Main Video, another video (the "Plaza Public Entrance UOF 12 2 22.exe" file (the "Security Desk Video")) shows the security guard gesturing to Deputy Winiarski, visible at the opposite end of the patio. Both videos show Deputy Winiarski, wearing a law enforcement uniform, hurrying to the courthouse entrance, which he entered before walking to the first bend in the security queue.

As Deputy Winiarski entered the courthouse, the two officials at the scanners called out to him and pointed at Wong, with one saying "this one right here." Deputy Winiarski stood in that bend, orally and through gestures instructing Wong to come to him. Ducking under the various security queue ropes, Wong walked towards Deputy Winiarski while the first scanner official said something to the effect of "he tried to bring a recorder in here." Deputy Winiarski told Wong to "calm down, don't yell at me, put it in your pocket and let's go, get out." When Wong responded, "but I have court," Deputy Winiarski said, while pointing towards the exit, "I don't care, out," to which Wong again replied, "I have court" and Deputy Winiarski again said "let's go." Wong said something that sounded like "whatever" as he jerked his head and turned around,

35

walking back towards the x-ray scanner to retrieve his basket. As Wong did so, Deputy Winarski wound through the scanning queue towards Wong, making a call on the radio affixed to his uniform shirt. The audio does not clearly reveal what he said, other than the apparent word "escort."

Holding his scanning basket in his right hand, Wong then started walking in front of Deputy Winiarski back through the security queue towards the entrance door. The videos do not clearly show what happened as Wong passed Deputy Winiarski, but Wong visibly moved his left arm as though pulling it away from Deputy Winiarki's grasp, after which Deputy Winiarski said "come on" and Wong appeared to reply "f— you" while turning slightly to look behind him at Deputy Winiarski. As seen more clearly on the Security Desk Video, Wong then stopped briefly and Deputy Winiarski walked into him, pushing Wong forward with his right forearm (as he did so, Deputy Winiarski carried a disposable water bottle in his right hand, which he subsequently set on the security desk as they walked past it out of the courthouse). Wong turned towards Deputy Winiarski and shook a finger in his face, after which Deputy Winiarski again pushed Wong forward with his forearm, to little effect. Wong continued to shake his finger in Deputy Winiarski's face for a few seconds before turning and continuing to walk through the queue towards the door, with Deputy Winiarski behind him pointing at his back. When they drew near the security desk,

36

Wong stopped, looking back at Deputy Winiarski, who pushed Wong forward with his forearm while pointing with his other hand towards the door; Wong fell back a few steps, but kept looking at Deputy Winiarski as Deputy Winiarski approached. Wong then walked out the courthouse door, followed by Deputy Winiarski. Less than thirty seconds elapsed between the time that Deputy Winiarski finished his radio call and the time that he exited the courthouse behind Wong.

The audio footage reveals that, during this walk to the door, Deputy Winiarski repeatedly and loudly instructed Wong to "get out" and Wong repeatedly told Deputy Winiarski, inter alia, not to touch him. Deputy Jenkins entered the video frame at the metal detectors during the interaction between Deputy Winiarski and Wong in front of the security desk, as Deputy Winiarski pushed Wong while loudly instructing, "get out," to which Wong appeared to respond "f— you." Deputy Jenkins wound his way through the security queue, arriving at the courthouse entrance approximately ten seconds after Wong reached that door.

The videos do not clearly show the remainder of the relevant interactions between Wong, Deputy Winiarski, and Deputy Jenkins. However, the Security Desk Video shows that, within the next twenty seconds, three additional security officers arrived at the entrance lobby from within the courthouse. The exterior videos (i.e., "Plaza Exit Outside UOF 12 2 22.exe" and "Plaza Public Outside UOF 12 2 22.exe") also show that, as Deputy Jenkins walked towards

where Wong and Deputy Winiarski stood, Wong looked down towards the scanning basket he held and Deputy Winiarski appeared to reach for that basket. The videos show Deputy Winiarski and Wong then took a few steps forward (away from the courthouse), with Wong moving slightly away from Deputy Winiarski, who let go of the scanning basket. As Deputy Winiarski and Wong separated, Deputy Jenkins approached, reaching out and grabbing hold of Wong's arm and the upper portion of the back of Wong's jacket. Approximately six seconds elapsed between Deputy Jenkins' exit from the courthouse and the time he reached Wong.

In sum, the videos and Amended Complaint reveal that (i) Wong engaged in a dispute with Guilford County Courthouse security officials and refused to leave the courthouse lobby, prompting those officials to call for law enforcement backup, including at least Deputy Winiarski, to deal with Wong; (ii) after a brief argument with Wong, Deputy Winiarski made a radio call and, within a minute, four additional law enforcement officers, including Deputy Jenkins, arrived on the scene; (iii) Deputy Jenkins arrived in audio-visual range at least by the time that Wong and Deputy Winiarski engaged in their disagreement in front of the security desk, with Deputy Winiarski loudly and repeatedly instructing Wong, who temporarily stood his ground, to leave the courthouse; (iv) once outside the courthouse, Deputy Winiarski told Wong that he was under arrest, reached for the scanner basket that Wong held,

and attempted to handcuff Wong; (v) Deputy Winiarski and Wong moved a few steps farther away from the courthouse and, as they broke apart, Wong retained control of the scanning basket; and (vi) observing this interaction between Deputy Winiarski and Wong, Deputy Jenkins grabbed hold of Wong as he and Deputy Winiarski separated, helping to effectuate the arrest.

Under the circumstances, Deputy Jenkins' "decision to assist [Deputy Winiarski] was objectively reasonable in light of the circumstances and existing law." Fernandes, 2012 WL 1664086, at *3 (internal quotation marks omitted); see, e.g., N.C. Gen. Stat. Ann. § 14-159.13 (explaining that a person commits second-degree trespass "if, without authorization, he . . . remains on premises of another . . . [a]fter he has been notified not to . . . remain there . . . by a person in charge of the premises . . . or by another authorized person"). Accordingly, qualified immunity shields Deputy Jenkins from Plaintiffs' claim that he arrested Wong without probable cause.

**CONCLUSION**

The Summary Judgment Motions and Discovery Motion qualify as premature; Plaintiffs' search claim and Mrs. Wong's Section 1983 emotional distress claim fail as a matter of law; and the Amended Complaint does not state a plausible claim against Guilford Defendants.

39

**IT IS THEREFORE RECOMMENDED** that (i) Plaintiffs' Guilford Motion (Docket Entry 17), Plaintiffs' Joint Motion (Docket Entry 24), the Guilford Motion (Docket Entry 26), Winiarski's Motion (Docket Entry 29), and Plaintiffs' Winiarski Motion (Docket Entry 35) be denied; (ii) the Dismissal Motion (Docket Entry 9) be granted; and (iii) Plaintiffs' search claim, Mrs. Wong's Section 1983 emotional distress claim, and Plaintiffs' claims against Guilford Defendants be dismissed, allowing only Wong's claim against Deputy Winiarski for arrest without probable cause to proceed.

**IT IS FURTHER ORDERED** that the Discovery Motion (Docket Entry 36) is **DENIED.**

This 8th day of January, 2024.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**